```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION

UNITED STATES OF AMERICA,    )
                             )
            Plaintiff,       )
                             )
      v.                     )    No. 4:09CR106 CAS
                             )               (FRB)
ROBIN CHRESTMAN,             )
                             )
            Defendant.       )
```

**MEMORANDUM,**
**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The defendant filed the following pretrial motions:

1. <u>Defendant's Motion To Suppress Physical Evidence</u> (Docket No. 33);

2. <u>Defendant's Motion To Suppress Statements</u> (Docket No. 34); and

3. <u>Supplemental Motion To Suppress Evidence</u> (Docket No. 55)

Testimony and evidence was adduced on the defendant's motions at a hearing before the undersigned on March 17, 2009. A written transcript of the hearing was prepared and filed with the court on March 24, 2009. The undersigned has reviewed the written transcript as well as the audio recording of the hearing to assist in making the following findings of fact and conclusions of law:

## Findings of Fact

On February 3, 2009, Detective Jerome Paskiewicz, of the St. Louis County, Missouri, Police Department was contacted by an employee of the Budget Inn Hotel in St. Clair, Missouri. The employee had provided information, in confidence, to the police department and had been paid for such information. The information has led to several criminal investigations, prosecutions and convictions. The informant told Detective Paskiewicz that on the previous evening a person had checked into the Hotel, at first providing her name as Robin Lee. The hotel clerk asked for identification from the person, who then produced identification showing her name to be Robin Chrestman.

Detective Paskiewicz is an experienced narcotics investigator having been involved in drug investigations since 1994. He has received special training in the area of narcotics investigations. At the time of the occurrence in question he was a member of a multi-jurisdictional drug task force of law enforcement officers.

After receiving the information from the informant Detective Paskiewicz went to the Budget Inn and was told to what room Ms. Chrestman was registered. He noted a Dodge Pickup truck bearing California license plates was parked near the room. He ran a check of the license and learned that the vehicle was registered to Robin Chrestman, San Diego, California. Detective Paskiewicz ran a criminal history check and learned that Chrestman had arrests

in 1985, 1999 and 2000 for marijuana related offenses. She was listed in a law enforcement data base as being a suspected marijuana courier. Detective Paskiewicz looked into the bed of the pickup truck and saw a large metal tool box. An external gasoline tank was located behind and underneath the tool box. From his training, as well as personal experience, Detective Paskiewicz knew that external fuel tanks were sometimes used to conceal narcotics and currency. He also knew that Interstate Highway 44, near where the hotel was located, was a known route for drug couriers.

Detective Paskiewicz then decided to conduct further investigation. He contacted other members of the drug task force unit to assist him.

He began surveillance of the Dodge truck. At approximately 11:00 a.m. he saw two women come out of the hotel and put luggage into the bed of the pickup truck. They then got into the truck and drove off eventually driving onto eastbound Interstate Highway 44. Detective Paskiewicz and other members of his unit followed in separate unmarked vehicles.

Detective Paskiewicz contacted Officer Jeremy Hake, a uniformed Saint Louis County police officer who was then driving a marked police car. Detective Paskiewicz told Officer Hake that he might need his assistance in stopping a vehicle that was traveling eastbound on Highway 44 from St. Clair, Missouri. Officer Hake then took up a position at Highway 44 and Antire Road. Detective

Paskiewicz also contacted Detective Gary Sodoma, a narcotics detection dog handler and notified him of the investigation and asked Detective Sodoma to be on standby with his dog in the area should his assistance be needed.

As the Dodge truck passed the intersection of Highway 44 and Antire Road Detective Paskiewicz notified Officer Hake and asked him to follow the truck and to conduct a stop of the vehicle if he observed it to commit any traffic violations. Officer Hake located and followed the vehicle from several car lengths behind. He paced the truck with his vehicle for a quarter of a mile to a half mile and determined that it was traveling at a speed of 77 miles per hour. The speed limit at that point was 65 miles per hour. At some point the truck passed into a zone where the speed limit lowered to 60 miles per hour, and the truck continued to drive at 77 miles per hour. Near the intersection of Highway 44 and Bowles Avenue Officer Hake conducted a traffic stop of the vehicle. The stop occurred at 11:57 a.m. He then approached the truck and spoke with the driver, later determined to be Robin Chrestman, the defendant here. He told her why she was stopped, to which she replied that she did not realize she had been driving that fast. Officer Hake then asked for, and she gave him, her driver's license, registration and insurance paper. He also obtained identification from the passenger, later determined to be the defendant's daughter.

In the meanwhile Detective Paskiewicz and another officer, Detective Hollocher, had arrived in the area of the traffic stop. Officer Hake gave the identification documents he had obtained from the women to those officers. The officers asked several questions of the women to determine where they were driving from and their destination and purpose. Detective Paskiewicz asked Ms. Chrestman how long she had the vehicle and the external gas tank. Ms. Chrestman replied "four months." This seemed odd to Detective Paskiewicz as the tank seemed very clean and not marked with fuel spills. At one point Detective Paskiewicz asked Ms. Chrestman why she needed the external fuel tank on the truck and she did not reply. During their conversation, in response to Detective Paskiewicz questions as to whether she had ever been arrested, Ms. Chrestman told Detective Paskiewicz that she had been arrested in California in 1999 for possession of 300 pounds of marijuana.

Detective Paskiewicz then asked Ms. Chrestman if she would consent to a search of her truck and she replied that she would. Because the weather was inclement and because of the volume of traffic that was passing by, Detective Paskiewicz felt that it would be easier and safer to conduct the search at a garage located about one-half mile away and he asked Ms. Chrestman if he could remove the vehicle to that location. Ms. Chrestman said no and did not agree to the removal of the truck from the roadside. At this

point about eight to ten minutes had elapsed since the initial stop of the truck.

Detective Paskiewicz then called for Detective Sodoma and his drug detection dog to come to the scene of the traffic stop. Detective Sodoma arrived on the scene in about five minutes from his nearby location and within approximately ten or fifteen minutes of the initial traffic stop. Upon arrival Detective Sodoma permitted his dog "Scooter" to sniff about the outside of the Dodge truck. When he began sniffing in the area between the back of the truck cab and the rear bed on the passenger side he alerted to the presence of a drug odor.

Detective Paskiewicz then took the Dodge truck from the roadside to the Fenton City Garage located less than a mile from the scene of the traffic stop. The other officers and the two women also went to the garage.

At the garage the officers undertook a search of the truck. They then examined the external fuel tank. The tank appeared to have weld marks on it. Also by tapping on various parts of the tank it appeared that the portion of the tank that was above the weld sounded hollow, while the area below the weld sounded solid. The officers then removed the metal tool box which was sitting on top of the fuel tank. They then unbolted the fuel tank from the truck. It appeared that the tank was non-functioning

as the wires connecting the tank to the fuel pump had been cut. After tilting the tank into an upright position the officers noticed an access panel that had been cut into the tank. The access panel was held in place by strong magnets. Using a crowbar the officers pried the magnets off the tank, removed the access panel and looked into the tank. They discovered what appeared to be several plastic wrapped bundles of marijuana. The tank was later taken to the DEA office where it was unloaded. There were in excess of 30 bundles of marijuana, weighing in total in excess of 90 kilograms.

While the officers were searching the truck at the Fenton City garage, Sergeant Carl Schillinger and Agent George Craig were interviewing the defendant. The interview took place in a lunch room area at the garage. The defendant had not been placed under arrest. She was not handcuffed or otherwise physically restrained in any way. There is no evidence that she was threatened or coerced in any way in order to induce her to answer questions. No weapons were displayed by the officers.

Following the discovery of the marijuana inside the fuel tank the defendant was placed under arrest. She was then transported to the Drug Enforcement Administration office. She was then advised of her <u>Miranda</u> rights. The officers attempted to further interview the defendant, however she invoked her right to

refuse to answer questions and the interview was terminated.

Discussion

<u>Motion To Suppress Evidence and</u>
<u>Supplemental Motion To Suppress Evidence</u>

As her first ground for her motion to suppress evidence the defendant asserts that the stop of her vehicle was made without reasonable suspicion or probable cause.

The defendant's truck was stopped because it was exceeding the speed limit. Based on this traffic violation there was probable cause to stop the vehicle. <u>United States v. Stapleton</u>, 10 F.3d 582, 583-84 (1993). It is well-settled that any traffic violation provides a police officer with probable cause to stop a vehicle, even if the officer conducted the valid traffic stop as a pretense for investigating other criminal activity. <u>See</u>, e.g., <u>United States v. Clarke</u>, 110 F.3d 612, 614 (8th Cir. 1997) ("In analyzing [the defendant's] arrest under the fourth amendment, we . . . ignore the officers' subjective intentions and focus solely on the objective question of whether probable cause existed."); <u>United States v. Pipes</u>, 125 F.3d 638, 640 (8th Cir. 1997) ("'If the officer has probable cause to stop the violator, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant.'"); <u>United States v. Bell</u>, 86 F.3d 820, 822 (8th Cir. 1996) ("The officers' suspicion that [the defendant] was involved in drug activity does not affect the stop's

objective reasonableness."); United States v. Pereira-Munoz, 59 F.3d 788, 791 (8th Cir. 1995)("So long as the officer is doing nothing more than he is legally permitted and objectively authorized to do, his actual state of mind is irrelevant for purposes of determining the lawfulness of the stop.").

The defendant next contends that the traffic stop was prolonged unreasonably.

A constitutionally permissible traffic stop can become unlawful "if it is prolonged beyond the time reasonably required to complete" its purpose. Illinois v. Cabellas, 543 U.S. 405, 407 (2005). During a traffic stop the officer "may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning." United States v. $404,905.00 In U.S. Currency, 182 F.3d 643, 647 (8th Cir. 1999). "During this process, the officer may ask the motorist routine questions such as his destination, the purpose of the trip, or whether the officer may search the vehicle, and he may act on whatever information is volunteered." Id. The officer may also ask passengers such questions. United States v. Coney, 456 F.3d 850, 857 (8th Cir. 2006). When during a lawful traffic stop the officer develops

reasonable suspicion that criminal activity may be afoot he may expand the scope of the traffic stop. United States v. Pereira-Munoz, 59 F.3d 788, 791 (8th Cir. 1995). The Supreme Court has described reasonable suspicion as "a particularized and objective basis" for suspecting criminal activity. United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Whether an officer has reasonable suspicion to expand the scope of a traffic stop is determined by looking at "the totality of the circumstances, in light of the officer's experience." United States v. Carrate, 122 F.3d 666, 668 (8th Cir. 1997). Though each factor giving rise to suspicion might appear to be innocent when viewed alone, a combination of factors may warrant further investigation when viewed together. United States v. Bloomfield, 40 F.3d 910, 918 (8th Cir. 1994) (en banc), cert. denied, 514 U.S. 1113 (1995). An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered. See United States v. Morgan, 270 F.3d 625, 631 (8th Cir. 2001).

The information known to Detective Paskiewicz prior to the traffic stop, coupled with the additional information learned during the stop, provided reasonable suspicion to believe that the vehicle might contain contraband and to expand the scope of the stop to call for the drug detection dog to come to the scene to

sniff the vehicle.  Prior to the stop Detective Paskiewicz had learned that a person had checked into the Budget Inn initially attempting to register using a name which was not her true full name.  He knew that a truck registered in the person's name, bearing California license plates, was parked at the hotel.  He knew that the truck was fitted with an exterior gas tank.  He knew, based on his training and experience, that such tanks were sometimes used to conceal drugs or currency.  He knew that a person with the same name as that used to register at the hotel, and the same name to which the truck was registered, had been arrested on three occasions over a fifteen year period for marijuana related offenses, and was listed in a law enforcement data base as a suspected drug courier.  As he continued the investigation he saw two women leave the hotel, enter the vehicle, and then drive onto Interstate Highway 44 in an eastbound direction.  He knew that Interstate Highway 44 is known to be a route used by drug traffickers.  After the vehicle was stopped for the traffic violation Detective Paskiewicz learned that the driver of the vehicle was in fact Robin Chrestman.  He further learned that she was driving from California to Chicago, Illinois.  She confirmed that she had previously been arrested for marijuana related offenses and reported that one arrest was for possession of 300 pounds of marijuana, an amount obviously for trafficking and

distribution.  She also advised that the external fuel tank had been in the truck for some period of time which appeared inconsistent with Detective Paskewicz's observations of the very clean appearance of the tank.  When asked why she needed the external tank Chrestman did not reply or offer any explanation.

The totality of these circumstances as viewed by an experienced officer provided reasonable suspicion to extend the stop by calling for the drug dog.  United States v. Carrate, 122 F.3d 666, 669 (8th Cir. 1997); United States v. Morgan, 270 F.3d 625, 631 (8th Cir. 2001); United States v. Bloomfield, 40 F.3d 910, 918-19 (8th Cir. 1994)(en banc), cert. denied, 514 U.S. 1113 (1995).

Further, the stop was not unreasonably extended.  The vehicle had been stopped and the occupants detained for no more than ten minutes when the decision was made to call for the drug dog.  The dog and its handler arrived at the scene of the stop within five minutes thereafter.  This brief extension was not unreasonable. United States v. Alexander, 448 F.3d 1014, 1017 (8th Cir. 2006) (Four minute delay not unreasonable); United States v. Linkous, 285 F.3d 716, 721 (8th Cir. 2002) (Seven minute delay not unreasonable); United States v. Morgan, 270 F.3d 625, 632 (8th Cir. 2001) (Ten minute delay not unreasonable).

When the drug dog arrived it was permitted to sniff the vehicle. The dog made a positive alert to the vehicle in the area where the external gas tank was located. The positive alert provided probable cause for the further search of the vehicle. United States v. Bloomfield, 40 F.3d 910, 919 (8th Cir. 1994) (en banc), cert. denied, 514 U.S. 1113 (1995); United States v. $404,905.00 In U.S. Currency, 182 F.3d 643, 647 (8th Cir. 1999); United States v. Sanchez, 417 F.3d 971, 976 (8th Cir. 2005).

Once probable cause to search the vehicle was established Detective Paskiewicz determined for safety reasons to move the truck to a nearby garage to conduct a further search of the vehicle. The move of the vehicle was justified and lawful. United States v. Olivera-Mendez, 484 F.3d 505, 513 (8th Cir. 2007); United States v. Castaneda, 438 F.3d 891, 894 (8th Cir. 2006).

The government contends that the search of the vehicle was lawful because made and done with the consent of the defendant. The defendant asserts that any consent to search given by her was not voluntary, or if given, was thereafter revoked when she refused to agree to the removal of the truck from the side of the highway. Because the search was lawful for the reasons discussed above the undersigned finds it unnecessary to determine whether the defendant voluntarily consented to a search of the vehicle, or whether consent was thereafter revoked.

The evidence found and seized in the search of the vehicle was lawfully found and seized.

Therefore, the defendant's Motion To Suppress Evidence and Supplemental Motion To Suppress Evidence should be denied.

Motion To Suppress Statements

As grounds to suppress any statements made by her to law enforcement officers the defendant asserts in her motion that the statements were the result of an unlawful arrest; that the statements were not voluntary; and that she made statements without first being advised of her constitutional (<u>Miranda</u>) rights. These claims have no merit.

In <u>Berkemer v. McCarty</u>, 468 U.S. 420 (1984), the Supreme Court held that even though a motorist is seized during a traffic stop, <u>Miranda</u> warnings are not required where the motorist is not subjected to the functional equivalent of a formal arrest. <u>Id.</u> at 440-42. At no time during the traffic stop was the defendant handcuffed or otherwise restrained. She was not told she was under arrest.

After the officers developed probable cause to search the vehicle the truck was removed to a nearby municipal garage. The defendant accompanied the officers to the garage. While the search was being conducted other officers spoke with the defendant. The conversation took place in a lunchroom area. Again, the defendant

was not handcuffed or otherwise restrained, nor was she told that she was under arrest.

The detention of the defendant while the officers searched the vehicle was an investigatory detention within the meaning of Terry v. Ohio, 392 U.S. 1 (1968). Miranda warnings are not required before questioning of persons detained during a Terry stop. United States v. Pelayo-Ruelas, 345 F.3d 589, (8th Cir. 2003). Although the officers may have had probable cause to place the defendant under arrest once the drug dog alerted to the vehicle, they did not do so. They continued their investigation to determine whether contraband was actually contained in the vehicle. Only after the marijuana was found concealed in the tank was the defendant placed under arrest. The defendant made no incriminating statements after she was placed under arrest.

There is no evidence that any of the statements made by the defendant to any law enforcement officers, either during the traffic stop or during the discussion at the garage facility lunchroom, were the result of any threats, promises or other coercion by any of the officers. The statements were therefore voluntary. Colorado v. Connelly, 479 U.S. 157 (1986).

Therefore, the defendant's Motion To Suppress Statements should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion To Suppress Physical Evidence (Docket No. 33); Supplemental Motion To Suppress Evidence (Docket No. 55); and Motion to Suppress Statements (Docket No. 34) be denied.

The parties are advised that they have to and including **Friday, July 31, 2009,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

/s/ Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of July, 2009.